**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

DARIONE P.,                              )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )        Case No. 25-cv-00060-SH
                                         )
FRANK BISIGNANO,[1]                      )
Commissioner of Social Security,         )
                                         )
        Defendant.                       )

## OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Darione P. seeks judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 402–434, 1381–1383f.  In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge.  For the reasons explained below, the Court affirms the Commissioner's decision.

## I.    Disability Determination and Standard of Review

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A) (regarding disabled individuals).  The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot,

---

[1] Effective May 7, 2025, pursuant to Fed. R. Civ. P. 25(d), Frank Bisignano, Commissioner of Social Security, is substituted as the defendant in this action.  No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520.[2] To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment(s) meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do their past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)–(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).[3] "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the

---

[2] *See generally* 20 C.F.R. § 416.920 for Title XVI. Where possible, the body of this opinion will reference the Title II regulations and provide, the first time mentioned, a parallel citation to Title XVI.

[3] *See generally* 20 C.F.R. § 416.960 for Title XVI.

decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if the court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.      Background and Procedural History

Plaintiff applied for Title II and XVI benefits in July of 2023. (R. 248–49, 255–56.) Plaintiff claimed she had been unable to work since November 30, 2022 (R. 255), due to conditions including post-traumatic stress disorder ("PTSD"), anxiety, insomnia, bipolar disorder, and sleep disorder (R. 368). Plaintiff was 32 years old on the date of the Administrative Law Judge's ("ALJ's") decision. (R. 36, R. 248.) Plaintiff has a year of college education and no past relevant work. (R. 61, 133, 308, 369.)

Plaintiff's claims were denied initially and on reconsideration. (R. 141–50, 157–64.) Plaintiff then requested and received a hearing before an ALJ. (R. 46–66, 166.) The ALJ denied benefits and found Plaintiff was not disabled. (R. 25–36.) The Appeals

3

Council denied review on December 16, 2024 (R. 7–9), rendering the Commissioner's decision final, 20 C.F.R. § 404.981.[4]  Plaintiff now appeals.

### III.    The ALJ's Decision

In his decision, the ALJ found that Plaintiff met the insured requirements for Title II purposes through June 30, 2027.  (R. 27.)  The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of November 30, 2022.  (*Id.*)  At step two, the ALJ found Plaintiff had the severe impairments of major depressive disorder, PTSD, and generalized anxiety disorder.  (*Id.*)  At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment.  (R. 27–29.)

The ALJ then determined that Plaintiff had the RFC to perform the full range of work at all exertional levels but with several limitations relating to her mental health:

> the claimant can understand, recall, and perform simple tasks and detailed tasks but not complex tasks and make occasional related judgments; she can attend to more than basic tasks, including tasks that require some (occasional) skills and judgment but that do not require doing complex work duties; she is able to concentrate and focus for two-hour periods with routine breaks and pace and persist for an eight-hour work day and forty-hour work week despite psychological symptoms; due to periodic interference from psychological symptoms, the claimant will have difficulty maintaining concentration for complex tasks; she is not able to interact appropriately with or tolerate contact with the public; and she can adapt to a work setting and some (occasional) changes in work setting.

(R. 29.)  The ALJ provided a recitation of the evidence that went into this finding.  (R. 29–34.)  At step four, the ALJ found that Plaintiff had no past relevant work.  (R. 34.)  Citing the vocational expert's opinion, the ALJ found there were jobs in that existed in significant numbers in the national economy that Plaintiff could perform—marker, assembler of

---

[4] *See generally* 20 C.F.R. § 416.1481 for Title XVI.

motor vehicles, and kitchen helper.  (R. 35–36.)  Consequently, the ALJ found Plaintiff not disabled.  (R. 36.)

## IV.   Issues

On appeal, Plaintiff argues that the ALJ's supportability and consistency evaluation of a single medical opinion was legally improper.  (Dkt. No. 11 at 8.)

## V.   Analysis

### A.   Medical Opinions--Generally

A medical opinion is a statement from a medical source[5] about what a claimant can still do despite her impairments and whether she has one or more impairment-related limitations or restrictions in the abilities to perform the physical, mental, or other demands of work activities, or in the ability to adapt to environmental conditions.  20 C.F.R. § 404.1513(a)(2).[6]  When considering a medical opinion, the ALJ does not defer or give any specific evidentiary weight to the opinion.  *Id.* §404.1520c(a).[7]  Instead, the ALJ evaluates the persuasiveness of an opinion by considering (1) its supportability; (2) its consistency; (3) the medical source's relationship with the claimant; (4) the medical source's specialization; and (5) any other factors that support or contradict the opinion.  *Id.* § 404.1520c(c).

Of these five factors, the ALJ must always explain how he considered only two—supportability and consistency.  *Id.* § 404.1520c(b)(2).  Supportability is internal to the medical source—"The more relevant the objective medical evidence and supporting

---

[5] Medical sources include licensed physician assistants ("PAs"), at least for impairments within the PA's scope of practice.  20 C.F.R. §§ 404.1502(a)(8), 416.902(a)(8).

[6] *See generally* 20 C.F.R. § 416.913 for Title XVI.

[7] *See generally* 20 C.F.R. § 416.920c for Title XVI.

explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be."[8]  *Id.* § 404.1520c(c)(1). Consistency, meanwhile, is more external.[9]  "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  *Id.* § 404.1520c(c)(2).

In making his determination, the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."  *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).  To the extent the ALJ is not rejecting the findings, however, he is under no obligation to discuss "every piece of evidence."  *See Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996); *see also Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (citing *Clifton* in the context of medical opinion evidence).  Instead, the ALJ must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Clifton*, 79 F.3d at 1010.  There is also no requirement "for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."  *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).  "The ALJ, not a physician, is charged with determining a claimant's RFC from the medical record"  *Id.* (citation modified).

---

[8] "We could rephrase this as a requirement to ask, 'Are the examiner's opinions well explained, and are they supported by the medical evidence he or she relied upon?'" *Riley v. Comm'r*, No. 25-5007, 2025 WL 3276227, at *2 (10th Cir. Nov. 25, 2025) (unpublished).  Unpublished decisions are not precedential, but they may be cited for their persuasive value.  10th Cir. R. 32.1(A).

[9] The consistency analysis can also include internal conflicts within evidence from the same provider.  *Evaluating Med'l Opinions and Prior Admin. Med'l Findings–Claims Filed on or after Mar. 27, 2017*, Program Operations Manual System, DI 24503.025(E)(2).

## B.    Laurie Ray, PA-C

Plaintiff argues that the ALJ failed to properly account for and analyze the medical opinion of Laurie Ray, PA-C. (Dkt. No. 11 at 9–15.) On May 17, 2024, Ray opined that Plaintiff had extreme limitations in the areas of physical functioning; interacting with others; and concentrating, persisting or maintaining pace. (R. 713.) Ray also found that Plaintiff had a marked limitation in adapting and managing herself; a moderate limitation in understanding, remembering, or applying information; and a moderate restriction of activities of daily living. (*Id.*) Ray found that Plaintiff could be expected to have one or two episodes of deterioration or decompensation in work-like settings each month. (*Id.*) And Ray found that Plaintiff would not be able to consistently perform activities within a schedule, maintain regular attendance, or be punctual. (*Id.*) Finally, Ray opined that Plaintiff would miss work 3–4 days per month due to medical conditions or appointments; would be off task 10–25% of the workday due to her inability to pay attention or concentrate; and would need more than 45 minutes of unscheduled break time during a workday. (R. 714.)

The ALJ found much of this opinion unpersuasive. (R. 33.) The ALJ found Ray's opinion partially persuasive to the extent it was in accord with the RFC found by the ALJ. (*Id.*) This RFC included a finding that Plaintiff can "understand, recall, and perform simple tasks and detailed tasks but not complex tasks" (R. 29), which the ALJ appeared to associate with Ray's opinion that Plaintiff had a moderate limitation in understanding, remembering, and applying information (R. 33). In evaluating the consistency of Ray's opinion, the ALJ noted that such a task-based limitation was consistent with other evidence in the record, including the August 3, 2023 examination of Plaintiff by Melissa Hogan, P.A. (R. 33–34.)

On supportability, the ALJ found that Ray's opinions were not supported by her own findings. (*Id.*) Specifically, the ALJ referred to Ray's February 13, 2024 assessment of Plaintiff where Ray found Plaintiff "was oriented to person, place, and time . . . ." (*Id.* (citing R. 683).[10]) Plaintiff was also "alert, not in acute distress, . . . her speech was clear, she had a normal affect, judgment, and insight, and she maintained eye contact." (*Id.*) Her mood was "mostly euthymic, her thought process were logical and relevant, her recent and remote memory were intact, and her attention span and concentration ability were normal." (*Id.*) "Last, her fund of knowledge included normal awareness of current and past events." (*Id.* (citing R. 686).)

Plaintiff faults the ALJ's supportability analysis for failing to mention other findings made by Ray during examinations on December 11, 2023; January 2 & 11, 2024; February 13, 2024; March 21, 2024; and May 30, 2024. (Dkt. No. 11 at 11–13 (citing R. 669, 670, 672–73, 677, 680, 682, 684, 688, 691–92, 694–95, 698, 700, 702, 707)).) However, the ALJ considered and expressly cited each of these examinations by Ray elsewhere in his decision. (R. 30 (citing January 11, 2024 examination); R. 31 (citing December 11, 2023 and February 13, 2024 examinations); R. 31–32 (citing January 2, 2024, March 21, 2024, and May 30, 2024 examinations); R. 33–34 (citing February 13, 2024 examination).) Far from ignoring Ray's findings that might support Ray's ultimate conclusions, the ALJ discussed each visit in detail. (*See, e.g.,* R. 31 ("Ms. Ray's mental status examination of the claimant showed claimant's mood was dysthymic and irritable. However, her speech, thought content, attention span, concentration, recent and remote memory, and fund of knowledge, were all normal."); *id.* ("On March 21, 2024, the

---

[10] Ray's February 13, 2024 assessment spans R. 682–88.

claimant was noted to be tearful, but she also reported a desire to go back to work and had recently taken an eight-hour class to get recertified . . . ."); R. 31–32 ("The claimant's mood and affect were noted to be anxious; however, the remainder of her physical and mental status examinations were unchanged from the previous session."). These citations from elsewhere in the opinion are sufficient for the Court to follow the ALJ's reasoning. *See Best-Willie v. Colvin*, 514 F. App'x 728, 733 (10th Cir. 2013) ("Although there was not a contemporaneous discussion of this evidence in discounting Dr. Hall's opinion, in reading the ALJ's decision as a whole, it is evident Dr. Hall's opinion is inconsistent with the record."). The ALJ's supportability analysis was sufficiently articulated and supported by substantial evidence.[11]

On consistency, Plaintiff argues that the ALJ examined consistency between his own RFC and other evidence "but does not mention PA Ray's opinion." (Dkt. No. 11 at 13.) Plaintiff's reading of the ALJ's consistency analysis is too narrow. As noted above, the ALJ specifically made this comparison <u>after</u> equating the persuasive portion of Ray's opinion with the RFC. The Court can follow the ALJ's reasoning and does not find, as Plaintiff suggests, that the ALJ failed to consider consistency at all.[12]

---

[11] In reply, Plaintiff appears to argue that the ALJ erred by not specifically discussing the "supporting explanations" presented by Ray with her opinion. (Dkt. No. 16 at 1.) Plaintiff, however, does not point to any such supporting explanations.

[12] Moreover, throughout his decision, the ALJ discussed a substantial amount of evidence that appeared inconsistent with Ray's opinion. For example, the ALJ described how, on August 3, 2023, Plaintiff presented to a medical provider with fair insight and judgment, she was oriented to person place, and time, she was cooperative and pleasant, and she had normal concentration. (R. 30.) In April of 2024, Plaintiff was noted by medical providers as having "a euthymic mood and congruent affect," and "she was in no apparent distress, oriented, alert, had normal judgment and insight, and her short-term and long-term memory were intact." (R. 32.) And "despite the claimant's testimony that she is easily distracted, irritable, and has trouble around people, most of her examinations have shown her to be cooperative, engaged, with a euthymic mood and affect, normal attention

Plaintiff also argues the ALJ's decision should be reversed because he "failed to compare the consistency of PA Ray's opinion with that of Susan Bredemeyer, MS LPC-S . . . ." (*Id.* at 14 (citing *Wild v. Dudek*, No. 24-CV-10-GLJ, 2025 WL 785212, at *5 (E.D. Okla. Mar. 12, 2025).)  The ALJ was not required to specifically compare the opinions of Ray and Bredemeyer.  *Harrison v. Comm'r, SSA*, No. 22-4108, 2024 WL 1856553, at *4 (10th Cir. Apr. 29, 2024) (unpublished) (noting the regulation "does not appear to more specifically require an explanation of whether any one source's opinion was consistent with that of another individual source").

Finally, Plaintiff complains the ALJ failed to discuss her PHQ-9 scores that reflected moderately severe depression.  (Dkt. No. 11 at 14.)  Although the ALJ did not refer specifically to these scores, Plaintiff does not explain how the scores are significantly probative given that the ALJ already found Plaintiff's major depressive disorder to be a severe impairment (R. 27) and went on to analyze the extent to which Plaintiff's impairments—including depression—resulted in limitations (R. 29–34).  There was no requirement that the ALJ specifically mention this one diagnostic test when analyzing the consistency of a medical opinion.

The ALJ appropriately articulated his findings as to supportability and consistency, and those findings are supported by substantial evidence.

## VI.    Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED**.

---

and concentration, and good eye contact."  (R. 32 (citing R. 634, 637–38, 644, 650, 654, 679, 686, 693, 697, 703).)

**SO ORDERED** this 24th day of March, 2026.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT